UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2015 DEC 17   AM 10: 09

CLERK

BY_____
DEPUTY CLERK

UNITED STATES OF AMERICA          )
                                  )
        v.                        )        Case Nos. 2:15-cr-12, 2:15-cr-23
                                  )
JOSEPH LEE DARLING                )

## ENTRY ORDER DENYING DEFENDANT'S MOTIONS TO FILE LATE NOTICE OF APPEAL
(Docs. 7, 44)

Pending before the court are Defendant Joseph Lee Darling's motions to file a late notice of appeal. (Docs. 7, 44.)  Defendant argues that good cause exists for his delay because he was "in transit" with the United States Marshals Service "for much of the time between his last communication with his counsel" and the date on which he filed the motions. *Id.* at 2.  The government opposes the motions and challenges Defendant's claim that he was "in transit."

The government is represented by Assistant United States Attorney Wendy L. Fuller.  Defendant is represented by Federal Public Defender Michael L. Desautels.

I.      **Factual and Procedural History.**

On January 9, 2004, following his guilty plea to one count of distributing five grams or more of cocaine base, the United States District Court for the District of Maine sentenced Defendant to a term of 132 months, followed by a five year term of supervised release.[1]  On July 1, 2010, Defendant commenced his term of supervised release.

On January 20, 2015, while on supervised release, Defendant was charged by Complaint filed in the United States District Court for the District of Vermont with distribution of Oxycodone in case number 2:15-cr-12, and on January 29, 2015, Defendant was indicted.  On May 14, 2015, the Grand Jury returned a two-count

---

[1] On July 10, 2008, the United States District Court for the District of Maine reduced Defendant's sentence to a total term of ninety-four months.

Superseding Indictment charging Defendant with conspiracy to distribute Oxycodone and distribution of Oxycodone.

On June 9, 2015, Defendant and the government entered into a plea agreement whereby Defendant pled guilty to conspiracy to distribute Oxycodone. As part of that agreement, Defendant and the government stipulated that Defendant's "conduct underlying . . . the Superseding Indictment involved at least 4,000 grams of Oxycodone, for a marijuana equivalent under the Guidelines of between 10,000 and 30,000 kilograms of marijuana." (Doc. 34 at 1-2.) On September 25, 2015, based on his underlying conduct in case number 2:15-cr-12, a Petition on Probation and Supervised Release was filed in case number 2:15-cr-23. Defendant admitted to the supervised release violation.

On October 1, 2015, Defendant was sentenced based on his guilty plea to one count of conspiring to distribute Oxycodone and his admission to violating the conditions of his supervised release. The base offense level for Defendant's conspiracy to distribute charge was 34 pursuant to the USSG § 2D1.1(c)(3). Defendant received a two point aggravating role adjustment under USSG § 2D1.1(b)(15)(E), as well as a two point increase because he was the organizer, leader, manager, or supervisor in the drug trafficking conspiracy pursuant to USSG § 3B1.1(c). Defendant's offense level was reduced by three points based on his acceptance of responsibility pursuant to USSG § 3E1.1, resulting in a total offense level of 35. Defendant had eight criminal history points and a criminal history category of IV. Defendant's Guideline range was thus 235 to 293 months, but because the statutorily authorized maximum sentence of twenty years was less than the maximum Guideline range, Defendant's Guideline range was 235 to 240 months. *See* USSG § 5G1.1(c)(1).

Defendant's Guideline range for his supervised release violation was 33 to 36 months. The Sentencing Guidelines provide that any term of incarceration for the supervised release violation be imposed consecutively. *See* United States Sentencing Guidelines Manual ("USSG") § 7B1.3(f) (U.S. Sentencing Comm'n 2014).[2]

---

[2] United States Sentencing Guidelines Manual ("USSG") § 7B1.3(f) (U.S. Sentencing Comm'n 2014) states that "[a]ny term of imprisonment imposed upon the revocation of probation or

2

The court sentenced Defendant to the mandatory minimum term of 120 months imprisonment[3] for conspiring to distribute Oxycodone and a consecutive term of thirteen months imprisonment on the supervised release violation.

In imposing the sentence, the court advised Defendant on the record of his appellate rights as follows:

> Both the defendant and the government may have the right to appeal this sentence, as set forth in Title 18, U.S. Code, section 3742. If the defendant is unable to pay the cost of an appeal, he has the right to apply for leave to appeal in forma pauperis in which event the court would waive the cost of an appeal, and request the court to appoint counsel for him. If the defendant so requests, the clerk of the court shall prepare and file forthwith a notice of appeal on behalf of the defendant. Notice of appeal by the defendant must be filed within 14 days of the date judgment is entered on the docket, pursuant to Rule 4(b) of the Federal Rules of Appellate Procedure.

Defendant's judgment was entered on the court docket on October 1, 2015, and his notice of appeal was thus required to be filed on or before October 15, 2015.

From October 1, 2015 until October 14, 2015, Defendant was incarcerated at Northwest State Correctional Facility in Vermont. During that time, Defendant corresponded with the Federal Public Defender's Office both in person and by telephone and stated that he did not wish to pursue an appeal. On October 15, 2015, Defendant was transferred to Strafford, New Hampshire, and he was subsequently transferred to MDC Brooklyn and ultimately to FCI Fort Dix in New Jersey, where he is currently incarcerated.

While in transit, Defendant contends that he was unable to meet with a Bureau of Prisons ("BOP") caseworker to request a telephone conference with his attorney. He

---

supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release."

[3] Any person who knowingly or intentionally "manufacture[s], distribute[s], or dispense[s], or possess[es] with intent to manufacture, distribute, or dispense, a controlled substance" in violation of 21 U.S.C. § 841(a), and whose conduct involves "1000 kilograms or more of a mixture or substance containing a detectable amount of marihuana . . . shall be sentenced to a term of imprisonment which may not be less than 10 years." 21 U.S.C. § 841(b)(1)(A)(vii).

allegedly sent his attorney a letter referencing an appeal after he was transferred from Strafford County Correctional Facility. Defendant has not supplied the date he sent this letter or submitted a redacted copy of the letter to the court. Defense counsel was unable to clearly interpret the letter or make telephone contact with Defendant until November 16, 2015, at which time Defendant expressed his "different perspective on his case in general and on his sentencing" as well as his desire to file a notice of appeal. (Doc. 47 at 3.)

## II.    Conclusions of Law and Analysis.

Defendant seeks to appeal his conviction and sentence on his supervised release violation as well as his sentence for conspiring to distribute Oxycodone. Pursuant to Fed. R. App. P. 4(b)(1)(A)(i), a defendant's notice of appeal "must be filed in the district court within 14 days after . . . the entry of . . . the judgment[.]"[4] After the time to file an appeal has expired, the court, "[u]pon a finding of excusable neglect or good cause, . . . [may] extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this Rule 4(b)." *Id.* at 4(b)(4). A district court faced with a request to file a late appeal "must make a finding" on the issue of excusable neglect or good cause, and if excusable neglect or good cause is found, "decide whether to exercise its discretion by granting the application." *United States v. Batista*, 22 F.3d 492, 494 (2d Cir. 1994).

> Whether a delay in filing is based on excusable neglect or good cause:
>
> is at bottom an equitable [inquiry], taking account of all relevant circumstances surrounding the party's omission. These include[] . . . the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (internal footnote omitted); *see also Stutson v. United States*, 516 U.S. 193, 196 (1996) (per curiam) (extending *Pioneer Inv. Servs. Co.*'s analysis of excusable neglect beyond

---

[4] A judgment is entered for purposes of the Rule "when it is entered on the criminal docket." Fed. R. App. P. 4(b)(6).

4

the confines of bankruptcy rules to Fed. R. App. P. 4). By using the terms "excusable neglect" and "good cause," "'Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.'" *United States v. Hooper*, 9 F.3d 257, 259 (2d Cir. 1993) (quoting *Pioneer Inv. Servs. Co.*, 507 U.S. at 388).

In applying the *Pioneer* factors to the facts of this case, the court first considers the issue of prejudice to the government. The court imposed a mandatory minimum sentence for Defendant with regard to the conspiracy charge and ordered Defendant's thirteen month supervised release violation sentence to run consecutively to that sentence. While Defendant may be able to challenge his substantially below Guidelines supervised release violation sentence, it is not clear on what grounds he could challenge his conviction or the imposition of a mandatory minimum sentence. The government is therefore likely to be prejudiced to some extent if it must devote resources to Defendant's appeal. *See In re Residential Capital, LLC*, 2014 WL 3798622, at *11 (Bankr. S.D.N.Y. July 31, 2014) (applying *Pioneer* factors and opining non-movants "would be prejudiced by being forced to defend against these meritless accusations").

The reason for the delay also weighs in favor of denying Defendant's motions. The court informed Defendant of his right to file an appeal at his sentencing and the deadline for doing so. It also informed Defendant that the clerk of the court would prepare and file the notice of appeal for him if he so desired. Defendant clearly understood his right to appeal because he discussed an appeal with his counsel and advised that he had decided not to pursue one. Defendant's change of mind generally does not establish either "excusable neglect" or "good cause" under Rule 4(b)(4). *See, e.g.*, *United States v. Craig*, 368 F.3d 738, 739 (7th Cir. 2004) (noting district court properly denied defendant's motion to file late appeal based on excusable neglect or good cause where defendant "had changed his mind while in prison"); *United States v. Maestas*, 1992 WL 83516, at *2 (10th Cir. Apr. 23, 1992) (concluding defendant "made an informed decision . . . to forego an appeal. Thereafter, he changed his mind. This

5

case does not present the typical circumstances where a Rule 4(b) finding of excusable neglect is appropriate").

Finally, although there is no evidence that Defendant is not proceeding in good faith, it is factually inaccurate to claim he was "in transit" as the reason for his delay. Defendant was in Vermont for all but the final day of his appeal period and conceded that, during that time, he had conversations with his attorney both by telephone and in person. During this same time period, he could have called the court and directed the clerk's office to prepare and file a notice of appeal on his behalf. Defendant thus could have filed a timely appeal had he chosen to do so. *Cf. United States v. Ceasar*, 2006 WL 1793645, at *2 (W.D. La. June 27, 2006) (opining that delay "was not within the [defendant's] control" where defendant "did not file the appeal [on time] because he was placed in segregation"). Instead, he waited until the last possible day to clearly announce his change of mind. *See* Fed. R. App. P. 4(b)(4) (authorizing district court to extend time for filing an appeal "for a period not to exceed 30 days").

For the foregoing reasons, the court concludes that Defendant has failed to establish "good cause" or "excusable neglect" for filing an untimely appeal. The balance of equities also do not support a conclusion that denying Defendants' motions will unfairly penalize him or undermine the interests of justice as there appears to be no meritorious grounds for an appeal. *See Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir. 2003) (observing that "the legal system would groan under the weight of a regimen of uncertainty in which time limitations were not rigorously enforced—where every missed deadline was the occasion for the embarkation on extensive trial and appellate litigation to determine the equities of enforcing the bar.").

## CONCLUSION

For the foregoing reasons, the court DENIES Defendant's motions to file late notice of appeal (Docs. 7, 44).

SO ORDERED.

Dated at Burlington, in the District of Vermont, this _17th_ day of December, 2015.

Christina Reiss, Chief Judge
United States District Court